UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:24-CV-00736-CRS

JOVAN DAVID REBOLLEDO MENDEZ                                    PETITIONER

v.

KEELY MARIE BRANDON                                                    RESPONDENT

## MEMORANDUM OPINION

This matter is before the Court on Petitioner's Verified Petition for Return of Children to Japan (DN 1) and Respondent's Motion to Dismiss (DN 6). The children are the daughter and son of Petitioner Jovan David Rebolledo Mendez ("Mendez"). Respondent Keely Marie Brandon ("Brandon") is their mother. Mendez alleges that since May 11, 2024, Brandon has wrongfully retained the children in the United States and refuses to return them to Japan which, according to Mendez, is the children's "habitual residence." Verified Petition, DN 1 at ¶ 1. Mendez seeks the children's return pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") as implemented by the International Child Abduction Remedies Act (ICARA), 28 U.S.C. § 9001 *et seq.*

In opposition, Brandon contends that this case should be dismissed because the Circuit Court for Hardin County, Kentucky has already ruled on Mendez's wrongful retention claim. Motion to Dismiss, DN 6; Reply, DN 9. Brandon also contends that this Court should abstain from exercising its jurisdiction given the state court's concurrent jurisdiction over Mendez's Convention claims. *Id.; see also* DN 15. For the reasons stated below, the Court will abstain from exercising its jurisdiction and will dismiss this case without prejudice.

## THE HAGUE CONVENTION

The Hague Convention "was adopted in 1980 in response to the problem of international child abductions during domestic disputes." *Abbott v. Abbott*, 560 U.S. 1, 8 (2010). "The Convention's core premise is that the interests of children . . . in matters relating to their custody are best served when custody decisions are made in the child's country of 'habitual residence.'" *Golan v. Saada*, 596 U.S. 666, 670 (2022) (internal quotation marks and citations omitted). "Accordingly, the Convention generally requires the 'prompt return' of a child to the child's country of habitual residence when the child has been wrongfully removed to or retained in another country." *Id.* (citing Art. 1(a)). "This requirement 'ensure[s] that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" *Id.* (quoting Art. 1(b)). The United States and Japan are signatories to the Convention.[1]

"Consistent with the Convention, ICARA 'empower[s] courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims.'" *Golan*, 596 U.S. at 671 (citing 22 U.S.C. § 9001(b)(4); Art. 19). ICARA permits a party to seek relief under the Convention in state or federal court. *Id.;* 22 U.S.C. § 9003(a). As a result, "[f]ull faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this chapter." 22 U.S.C. § 9003(g).

## BACKGROUND AND PROCEDURAL HISTORY

### A. The State Court Proceeding

On October 21, 2024, Brandon filed a Petition for Dissolution of Marriage in the Circuit Court of Hardin County, Kentucky (the "Hardin Circuit Court"). She asked the state court to

---

[1] Status Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=24.

dissolve her marriage to Mendez and to grant her custody of the children. On November 27, 2024, Mendez filed two documents in the Hardin Circuit Court: (1) "Father's Notice of Wrongful Retention Claim and Notice to Stay Pursuant to Article 16 of the Hague Child Abduction Convention" and (2) "Application for Assistance in Child's Return."

The Notice alleges:

> 2. The Mother is wrongfully retaining the Parties' minor children, M.R.B. and B.R.B. in Hardin County, Kentucky.
>
> 3. The Father hereby notifies the Court of the following: that the Mother wrongfully retained M.R.B. and B.R.B. from their habitual residence in Japan within the meaning of Article 3 of the Convention; that the father ***will be filing an appropriate application and petition*** for return of the child with the Japan Central Authority and ***in a judicial proceeding in the United States within a reasonable time following this Notice.***

Notice, DN 6-3 at PageID# 53-54 (emphasis added). On the heels of this Notice, Mendez filed the Application he had filed with the Japan Central Authority, *i.e.*, the "Application for Assistance in Child's Return."[2] Thus, the Hardin Circuit Court had received notice of Mendez's wrongful retention claim and an application for the children's return to Japan. Mendez did not file a petition in this Court at that time.

Mendez's Notice advised the Hardin Circuit Court that until his wrongful-retention claim was resolved, it could not make a custody determination:

> 4. Article 16 of the Convention requires that:
>
> After receiving notice of a wrongful removal or retention of children in the sense of Article 3, the judicial or administrative authorities of the Contracting State [the United States] to which the child has been removed or in which it has been retained ***shall not decide on the merits of rights of custody until it has been determined that the children are not to be returned under this***

---

[2] The Court takes judicial notice of the Application Mendez filed in the Hardin Circuit Court pursuant to Fed. R. Evid. 201. The Rule provides that at "any stage of the proceeding," a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b), (d). The Application, a publicly available document, falls within the Rule.

3

> ***Convention*** or unless an application under this Convention is not lodged within a reasonable time following receipt of this notice.

*Id.* at PageID# 54 (emphasis in original). At the same time, Mendez's Application set forth the following: (1) both children were under 16 years of age, (2) their habitual residence was Japan, (3) Mendez was exercising his custody rights under the law of Japan and (4) Brandon had breached those rights since May 11, 2024 by failing to return the children to Japan. These allegations include all the elements of a wrongful retention case under the Convention.[3] Further, in his Notice, in addition to the wrongful-retention determination, Mendez advised the Hardin Circuit Court as to all other issues necessary to granting him relief under the Convention:

> 6. The issues to be resolved in the Hague Convention proceeding are (A) whether the Mother wrongfully retained the parties' child from his habitual residence of Japan under Article 3 of the Convention; and (B) if so, whether any of the Convention's exceptions to return apply; and (C) if the Father's petition is granted, whether it would be clearly inappropriate for the deciding court to enter an award of fees and expenses against the Mother and in favor of the Father.

DN 6-3 at PageID# 54.

On November 21, 2024, four days before Mendez filed in the Hardin Circuit Court, Brandon had moved for primary custody of the children. In light of Brandon's custody Motion and Mendez's wrongful retention allegations, on December 16, 2024, the Hardin Circuit Court entered an order setting a "Hague Determination" evidentiary hearing for February 17, 2025 at 1:30 p.m. *See* DN 6-4. The order noted that it was being set in light of Brandon's motion for primary custody. *Id.* Mendez did not challenge the state court's order.

---

[3] Hague Convention on the Civil Aspects of Int'l Child Abduction, Article 3, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89; *Pliego v. Hayes*, 86 F. Supp.3d 678, 693-94 (W.D. Ky. 2015) (prima facie case for child's return: (1) child had a "habitual residence" in a foreign country that is a signatory to the Convention; (2) removal or retention was in breach of the petitioner's custody rights under the law of the country of habitual residence; and (3) petitioner was exercising those rights at the time of the child's wrongful removal or retention.).

4

On February 17, 2025, the Hardin Circuit Court held the Hague Determination hearing. On February 25, 2025, the court entered its Findings of Fact, Conclusions of Law, Judgment and Decree with respect to Mendez's wrongful retention claim (the "Hague Judgment," DN 10-1). The court explained why and for what purpose it held the February 17, 2025 hearing:

> On November 27, 2024, an application was filed on [Mendez's] behalf pursuant to 22 U.S.C. section 9003(b) claiming that [Brandon] had wrongly removed the parties' minor children from Japan to the United States and, more specifically, to the Commonwealth of Kentucky. While [Mendez] did not denominate his pleading as a "petition," his November 27, 2024 filing substantially complied with 22 U.S.C. section 9003(b) leading this court to schedule a hearing related to the claims under the International Child Abduction Remedy Act and 1980 Commission [sic] on the Civil Aspects of International Child Abduction, hereinafter referred to as the "Hague Convention."
>
> Because notice had been given to this Court of a claim under the Hague convention [sic], this Court had a duty to resolve that claim prior to having a hearing on custody. Therefore, this Court scheduled a hearing for February 17, 2025, at 1:30 PM for hearing testimony on [Mendez's] claim that the children had been wrongfully removed and/or retained.

Hague Judgment at ¶¶ 13, 15, DN 10-1 at PageID# 86. The court also explained that "[n]otice of the hearing was given to [Mendez] and to his Counsel. Counsel notified the Court that she would not be participating in this hearing and [Mendez] did not appear." *Id.* at ¶ 15.

The Hardin Circuit Court heard testimony from Brandon and her father. *Id.* at PageID# 84. The state court also examined certain records. *Id.* at ¶ 4, ¶ 7, PageID# 85, 86. Following its review of the pleadings and evidence, the Hardin Circuit Court concluded that Mendez failed to prove his wrongful retention claim and denied his petition for the children's return. *Id.* at PageID# 88-89. About one month later, on March 24, 2025, the Hardin Circuit Court dissolved the parties' marriage and awarded full custody of the children to Brandon. DN 15-1 (the "Custody Judgment"). The Custody Judgment incorporates by reference the Findings of Fact set forth in the Hague Judgment. *Id.* at PageID# 128.

5

**B. This Federal Court Proceeding**

Mendez filed his Petition in this Court on December 20, 2024 (DN 1). Summons did not issue until December 23, 2024 (DN 5). Mendez did not seek expedited relief. He did not advise this Court of the state court action. He did not file a return of service. Nonetheless, on January 14, 2025, Brandon moved to dismiss (DN 6). Mendez responded on January 27, 2025 (DN 8).[4] Brandon filed her Reply on February 7, 2025 (DN 9). Mendez did not seek expedited relief on Brandon's Motion. About a week later, the Hardin Circuit Court held its hearing on Mendez's Convention claims and about a week after the hearing issued its Hague Judgment. That is, approximately two weeks after Brandon's Motion to Dismiss was fully briefed in this Court, the Hardin Circuit Court had resolved Mendez's claims for wrongful retention under the Convention.

On February 28, 2025, Brandon moved to supplement her Motion to Dismiss with the state court's Hague Judgment (DN 10). Three days after that, on March 3, 2025, Mendez moved for expedited relief (DN 11). On March 17, 2025, Brandon responded to the Motion to Expedite (DN 12). The next day, on March 18, 2025, given ICARA's full-faith-and-credit mandate, this Court ordered Mendez to show cause why it should not abstain and dismiss (DN 13). The Court gave Mendez fourteen (14) days to show cause, gave Brandon fourteen (14) days to respond, and gave Mendez seven (7) days from the date of Brandon's response to reply. *Id.* Mendez took the full 14 days, filing on April 1, 2025.[5] Brandon responded on April 14, 2025. Thus, Mendez's reply deadline was April 21, 2025. Mendez did not reply on April 21, 2025. He replied on April 22, 2025 (DN 16). On April 23, 2025, Brandon moved to strike the untimely reply (DN 17).

---

[4] Mendez filed two copies of his Response – DN 7 & DN 8. The substantive argument is the same. The difference is that DN 8 includes a Certificate of Service which was omitted from DN 7.

[5] Given the circumstances, the Court denied Mendez's Motion to Expedite subject to renewal should the Court determine that this action may proceed. The Court granted Brandon's Motion to Supplement the record with the state court's Hague Judgment. *Id.*

## ANALYSIS

### A. Motion to Strike

Brandon asks the Court to strike Mendez's final brief because he filed late, despite having ample notice of the deadline. Mendez did not respond to the Motion to Strike. A party's failure to respond to a motion may be grounds to grant the motion. LR 7.1(c). Even so and while Mendez's brief is untimely, the Federal Rules of Civil Procedure do not permit the requested relief of striking it from the record. Rule 12(f) governs requests to strike. It applies only to pleadings, however, and a reply brief is not a "pleading" as defined by Federal Rule of Civil Procedure 7. Further, while the Court may nonetheless forgo consideration of an untimely filing, in this case, the Court finds that Mendez's brief adds little to his arguments and Brandon has not shown she has been prejudiced by Mendez's brief's being just a day late. To the contrary, Mendez's late filing coupled with his failure to respond to the Motion to Strike somewhat undermines his sincerity in seeking expedited relief from this Court.

### B. Motion to Dismiss

Mendez asserts three reasons why this Court should not dismiss: (1) he did not file a "petition" in state court; (2) he has the right to choose the forum for his Convention claims and by filing a "Petition" in this Court, he chose this forum which, in turn, requires this Court to entertain and resolve his claims; and (3) he was not served properly in connection with the state court proceedings, rendering the state court's Hague Judgment void. He adds that federal courts "are overwhelmingly opposed to abstention in Hague abduction cases"[6] and argues that neither the *Younger* nor *Colorado River* abstention doctrine applies to the circumstances here. Lastly, Mendez accuses the Hardin Circuit Court judge of "abject unfairness and bias" as well as being "an elected

---

[6] Response, DN 14 at PageID# 111.

jurist dictating by force the jurisdiction and forum" in this case, which, he says, shows that this federal Court is the best forum for resolution of his claims. Response, DN 14 at PageID# 108 & 111, respectively.

Mendez's arguments are flawed in several respects. First, while it is true that Convention claims are usually initiated by a "petition" when filed in federal court, such a pleading is not required by the Convention,[7] and in state court, "petitions" for relief under the Convention are filed in a wide range of proceedings, including custody cases. *See e.g. Harsacky v. Harsacky*, 930 S.W.2d 410 (Ky. Ct. App. 1996) (raising return of child issue in child-custody action). Mendez appeared by counsel in the Hardin Circuit Court. His Notice advised the Hardin Circuit Court that he would be "filing an appropriate application and petition" for the children's return "with the Japan Central Authority" and "in a judicial proceeding in the United States." Notice at ¶ 3, DN 10-1 at PageID# 53-54. Thereafter, he filed his Application to the Japanese Central Authority in the Hardin Circuit Court. The Hardin Circuit Court construed Mendez's actions as his decision to petition that court for relief under the Convention as he had filed his Application in that judicial proceeding.

The state court's construction of Mendez's filings comports with the Convention. Indeed, the State Department's interpretation of the Convention counsels petitioners to include central authority applications when petitioning for the return of a child:

> . . . a court should be provided with at least as much information as a Central Authority is to be provided in a return application . . . . To ensure that all necessary information is provided, the applicant may wish to append to the

---

[7] Hague Int'l Child Abduction Convention; Text and Legal Analysis, 51 FR 10494-01 at 10508 ("The Convention does not expressly set forth pleading requirements that must be satisfied by an applicant . . . ."). The State Department prepared the Text and Legal Analysis for the United States Senate as a part of the ratification process for the Convention. As such it is entitled to deference: "It is well settled that the Executive Branch's interpretation of a treaty 'is entitled to great weight.'" *Abbott*, 560 U.S. at 15 (quoting *Sumitomo Shoji America, Inc. v. Avagliano,* 457 U.S. 176, 185 (1982)).

8

> petition to the court a completed copy of the recommended model form for return of a child . . . .
>
> In addition . . . , the petition for return should allege that the child was wrongfully removed or retained by the defendant in violation of custody rights that were actually being exercised by the petitioner. The petition should state the source of the custody rights, the date of the wrongful conduct, and the child's age at that time.

Hague Int'l Child Abduction Convention; Text and Legal Analysis, 51 FR 10494-01 at 10508.

Mendez's Application provided all of this information to the Hardin Circuit Court. Further, his Notice set forth what decisions that court needed to make under the Convention:

> The issues to be resolved in the Hague Convention proceeding are (A) whether the Mother wrongfully retained the parties' child from his habitual residence of Japan under Article 3 of the Convention; (B) if so, whether any of the Convention's exceptions to return apply; and (C) if the Father's petition is granted, whether it would be clearly inappropriate for the deciding court to enter an award of fees and expenses against the Mother and in favor of the Father.

11/27/24 Notice at ¶ 6, DN 6-3 at PageID# 54. This too comported with the State Department's recommendation for the information a petitioner should provide to a court. Hague Int'l Child Abduction Convention; Text and Legal Analysis, 51 FR 10494-01 at 10508 (prayer for relief should request fees and expenses incurred to secure child's return).

While Mendez now maintains that he did not seek relief on his Convention claims in state court, he never made a formal objection or motion in the Hardin Circuit Court to disabuse it of its conclusion that he was seeking such relief. His filings did not state that he intended to petition a different court. Nor did he petition this Court at or near the time he appeared in the Hardin Circuit Court—despite having already prepared the necessary allegations. Rather, he allowed three weeks to pass – half the time period in which the Convention encourages that a decision be made. *Id.* at 10499. In fact, even after the Hardin Circuit Court set its Hague Determination hearing, Mendez did nothing to stay the state court's hand. He did not a file a motion or formal objection. He did not contest jurisdiction. He did not immediately advise the state court of an intention to petition

9

this Court. Beyond that, after he filed his petition in this Court, he did not inform the state court that he had done so. Nor did he seek expedited relief from or advise this Court of the parallel state court proceedings upon filing his Petition here. Undoubtedly, Mendez had ample time to take such actions. The Hardin Circuit Court set its Hague Determination hearing two months in advance of the hearing.

Mendez's choice-of-forum arguments are unavailing for the same reasons. Mendez contends that Hardin Circuit Court engaged in "scare tactics" and tried to force him into that forum. This Court disagrees. Mendez was free to petition this Court first. Instead, he announced his intent to file "a petition and application in *a* judicial proceeding," DN 6-3 at ¶ 3,[8] and immediately filed his Application in the Hardin Circuit Court's judicial proceeding. Then he sat back. He never indicated an intent to petition a different court for the return of the children. He did not challenge the Hardin Circuit Court's jurisdiction over him in response to its order setting the Hague Determination hearing. He did nothing. In fact, on December 16, 2024, when the Hardin Circuit Court set the Hague Determination hearing, Mendez had not filed a petition in this Court. That is, he had ***not*** elected a different forum. Contrary to Mendez's assertions, this record does not smack of depriving him of his choice of forum or of acting so quickly that Mendez could not challenge the state court's jurisdiction or orders.

Mendez's final argument is equally unavailing. Mendez contends this Court can proceed because the Hardin Circuit Court's Hague Judgment is void. More specifically, he asserts that because he was never properly served, the state court did not have jurisdiction over him, rendering its judgment void. That is, Mendez is urging the Court to overturn the Hardin Circuit Court's Hague Judgment despite ICARA's mandate that the Court give full faith and credit to that

---

[8] (emphasis added).

10

judgment. 22 U.S.C. § 9003(g). The Hardin Circuit Court has original, concurrent jurisdiction over Convention claims brought pursuant to ICARA. Its Hague Judgment denied Mendez's claim that the children had been wrongfully retained. There is no order voiding that judgment and Mendez has not identified any applicable exception to the force and effect of § 9003(g).

Moreover, proceeding now threatens the Hardin Circuit Court's ability to enforce its Hague Judgment. This circumstance warrants the Court's abstention pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). "Under *Younger* abstention . . . a federal court must decline to interfere with pending state civil or criminal proceedings when important state interests are involved." *O'Neil v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2006) (citing *Middlesex Cnty. Ethics Com. v. Garden States Bar Ass'n*, 457 U.S. 423, 432 (1982)). Stated another way, when permitting a federal lawsuit to proceed threatens "undue interference with state proceedings" the proper result is for the federal court to abstain. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (quoting *Younger*, 401 U.S. at 44). At the same time, *Younger* abstention is limited to parallel state court proceedings that fall into one of three narrow categories: (1) criminal prosecutions (2) civil-enforcement actions which resemble criminal prosecutions and (3) cases that implicate a State's interest in enforcing its judgments. *Id.* at 72-73. The third category pertains here. Specifically, this matter involves "'orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Id.* at 73 (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 373 (1989)).

Indeed, this case is similar to *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987). In *Pennzoil*, Texaco sued in federal court, seeking to enjoin Pennzoil from enforcing a jury verdict rendered in a Texas state court. The Supreme Court held that *Younger* abstention was proper, finding that such restraint comported with its recognition that "the States have important interests in administering

11

certain aspects of their judicial systems." *Id.* at 12-13. The Supreme Court explained that the state court's ability to enforce its jury verdicts was necessary "to vindicate and preserve the private interests of competing litigants" and to "stand[ ] in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory." *Id.* at 13. The same principles apply here. This case involves a final decision rendered in a state court proceeding between private litigants: the Hardin Circuit Court's Hague Judgment. Further, Mendez seeks relief from this Court that would render the Hague Judgment "nugatory." He is asking this Court to entertain his Convention claim, find in his favor and, thus, to overturn the state court's judgment. As a result, proceeding with this action threatens the Hardin Circuit Court's ability to enforce its Hague Judgment which means this matter falls within the third category of cases that may warrant *Younger* abstention. Whether the Court may abstain requires additional analysis.

Specifically, to decide if it may abstain under *Younger*, the Court must analyze this case using the three-factor test set forth in *Middlesex*, 457 U.S. 423. *Sprint*, 571 U.S. at 81. This Court may abstain if (1) state proceedings are currently pending, (2) those proceedings involve an important state interest and (3) those proceedings will provide Mendez with an adequate opportunity to raise constitutional challenges. *Middlesex*, 457 U.S. at 432. All three factors are satisfied in this case. The state court proceedings were on-going when Mendez filed in this Court.[9] The Hardin Circuit Court proceeding involved both Mendez's Convention claims and domestic relations which are "a traditional area of state concern." *Ankenbrandt v. Richards,* 504 U.S. 689 (1992); *Moore v. Sims*, 442 U.S. 415 (1979) (applying *Younger* abstention to a child abuse case involving temporary removal of child); *Kelm v. Hyatt,* 44 F.3d 415, 420 (6th Cir. 1995) ("traditional domestic-relations issues qualify as important state issues under the second element

---

[9] *Sun Refining & Marketing Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990) (proper time of reference for applicability of *Younger* abstention is time federal complaint is filed).

of *Younger*."); *Parker v. Turner*, 626 F.2d 1, 4 *6th Cir. 1980) ("domestic relations . . . proceedings are traditionally of deep state concern.").

"With regard to the third prong of the *Younger* test, the Supreme Court has noted that where important state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." *Sun Refining*, 921 F.2d at 641 (citing *Middlesex*, 457 U.S. at 431-32). "The pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims." *Id.* The burden is on Mendez to show that the state court would not afford him such an opportunity. *Kelm*, 44 F.3d at 420. Mendez has not done so.

Abstention would also be proper under the *Colorado River* doctrine. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976). First, this proceeding and the Hardin Circuit Court proceeding are parallel.[10] The parties are identical and the same Convention issues were presented in both courts. In both actions, Mendez raises claims pursuant to the Convention and ICARA, alleging that under international law, the children should be living with him in Japan. Mendez made these allegations in state court after Brandon moved for custody. Next, the circumstances are such that *Colorado River* abstention is proper in this instance, considering the pertinent factors. Those factors include (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and, (8) the presence or absence of concurrent jurisdiction. *Bates*, 122 F. App'x at 807 (quoting *Romine v. CompuServe*

---

[10] *Bates v. Van Buren Tp.*, 122 F. App'x 803, 806 (6th Cir. 2004) (before abstaining under *Colorado River*, court must determine if proceedings are parallel) (citing *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984)).

*Corp.*, 160 F.3d 337, 340-41 (6th Cir. 1998)). Two of these factors weigh against abstention. Five weigh in favor of abstention. One is neutral.

The forum location is neutral. Mendez could appear virtually in either this Court or the Hardin Circuit Court. Brandon resides in Hardin County and this Court sits in Jefferson County. The distance is appreciable but not great. The factors that weigh against abstention are lack of a *res* and the federal source of law. The Convention is a federal treaty and ICARA is a federal statutory scheme.[11] There is no property at issue. The remaining factors weigh in favor of abstention. Mendez appeared in Hardin Circuit Court first and did not contest that court's jurisdiction over him. Rather, he raised his Convention claims in defense to Brandon's plea and motion for the children's custody. Further, Mendez did not petition this Court for the children's return until three weeks after he appeared in the Hardin Circuit Court.

Second, the state court proceedings had significantly progressed by the time Mendez filed in this Court. His Application for the children's return was filed and the state court's Hague Determination hearing was set to take place. In this Court, the proceedings were in an early stage. In response to Mendez's Petition, Brandon moved to dismiss. That motion was not fully briefed until February 7, 2025. By that time, the Hardin Circuit Court was poised to make a decision on the merits—the Hague Determination hearing being set for February 17, 2025, just ten (10) calendar days and five (5) working days after Brandon's Motion to Dismiss was fully briefed. Next, the state court provided an adequate forum for the protection of Mendez's rights. This conclusion is evident from ICARA's grant of concurrent, original jurisdiction to the courts of the States which also satisfies the eighth factor. Further, the Hardin Circuit Court set an evidentiary

---

[11] While this factor weighs against abstention, it does not heavily weigh against it because the state courts have concurrent jurisdiction. *Id.* (source of law less significant where concurrent jurisdiction exists) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 (1983)).

hearing and gave Mendez an equal opportunity to present evidence and testimony in support of his wrongful retention claim. His decision to forgo that opportunity does not, contrary to his argument, prove that the Hardin Circuit Court is biased or that the presiding judge is "an elected jurist dictating by force the jurisdiction and forum the left behind parent must use." Response, DN 14 at PageID# 108. Finally, abstaining promotes the objective of avoiding piecemeal litigation. Thus, on balance, the Court finds that *Colorado River* abstention is appropriate in this case.

      None of the cases on which Mendez relies require the Court to exercise its jurisdiction. Nor do they dissuade the Court from abstaining in this instance. Mendez contends that abstaining in the present circumstances would be unprecedented. He asserts that no federal court has abstained in like circumstances. That assertion is belied by one of the cases on which Mendez relies: *Schoner v. Schoner*, No. 3:23-cv-382, 2024 WL 3164524 (S.D. Ohio Jun. 25, 2024). In that case, the father petitioned the federal court after state court proceedings involving custody were already underway. And, rather than helping Mendez, *Schoner* hurts him.[12] The Ohio district court abstained pursuant to *Younger* and dismissed. Like this Court, in *Schoner*, the court found that the elements necessary for *Younger* abstention were met and that to the extent the petitioner believed the state court lacked personal jurisdiction over him, those arguments should be raised in the state court.

      Mendez otherwise takes a shotgun approach to case law. He cites *Yang v. Tsai*, 416 F.3d 199 (3d Cir. 2005) but in that case, the Court held that "if the state proceeding is one in which the petitioner has raised, litigated and been given a ruling on the Hague Convention claims, any subsequent ruling by the federal court on these same issues would constitute interference." *Id.* at 203. Thus, in such cases *Younger* abstention would be proper. *Id.* Next, Mendez errantly asserts that *Diabo v. Delisle*, 500 F. Supp.2d 159 (N.D.N.Y. 2007) provides "controlling law." Aside from

---

[12] Moreover, Mendez misquotes the *Schoner* decision, attributing the court's summary of the petitioner's argument in that case to the court's rationale.

15

its nonbinding nature, *Diabo* does not inform this Court's abstention determination. It was an Anti-Inunction Act case and concerned the federal court's power to protect its own order. Its only mention of abstention was the summary assertion that *Younger* did not apply when a case concerns the protection of a federal court order. There is no federal court order to protect in this case.

*Hazbun Escaf v. Rodriquez*, 191 F. Supp.2d 685, 693 (E.D. Va. 2002) involved state court custody proceedings but no claims under the Convention were presented to the state court. Here, Mendez raised his Convention claims with the state court.[13] *Barzilay v. Barzilay*, 536 F.3d 844 (8th Cir. 2008) does not help Mendez for the same reason. In that case, the Convention claims had not been raised in state court, only referenced in connection with arguments that an Israeli judgment was invalid and violated the spirit of the Convention. Here, Mendez raised his rights to the children's return under the Convention in defense of Brandon's plea and Motion seeking full custody, filing his Application for the children's return in the Hardin Circuit Court. As well, Mendez never challenged the state court's jurisdiction over him in response to its order setting the Hague Determination hearing. Nor did he inform the state court that he intended to file a Hague petition in federal court—either before or after he filed in this Court. These facts distinguish this case from *Barzilay*.

Mendez contends that "[t]he Eighth Nineth [sic] and Eleventh Circuits implicitly foreclosed Colorado River in Holder v. Holder and Silverman v. Silverman." Response, DN 14 at 111 (citing *Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002)). Mendez did not provide a citation to an Eleventh Circuit case. Similarly, he did not provide a reporter citation for *Silverman v. Silverman*. There are two such cases from the Eighth Circuit: *Silverman v. Silverman*, 267 F.2d

---

[13] Also, *Rodriquez* appears wrongly decided. The court asked whether the federal proceedings implicated an important state interest and found that because they were limited to Convention issues, they did not. *Id.* at 692-93. However, the *Middlesex* factors require the court to ask if the state court proceedings implicate important state interests, not the federal proceedings. *Sun Refining*, 921 F.2d at 639.

16

788 (8th Cir. 2001) and *Silverman v. Silverman*, 338 F.3d 886 (8th Cir. 2003). Neither concerns *Colorado River* abstention.[14] As for *Holder*, it does not preclude the Court's abstention under *Colorado River*. In that case, the court found that the federal and state cases were not parallel. 305 F.3d at 868.

Mendez also cites additional cases. But none concern abstention or full faith and credit. He cites *March v. Levine*, 249 F.2d 462 (6th 2001) for the proposition that the entry of state court orders generally is not a bar to this Court's ruling on his Petition. *March* concerned the fugitive disentitlement defense. Mendez also cites *Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001). *Mozes* concerned the standard for determining a child's habitual residence. Further, the Sixth Circuit Court of Appeals, has expressly disagreed with *Mozes*. *See Robert v. Tesson*, 507 F.3d 981, 990-91 (6th Cir. 2007). Next, Mendez cites *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). That case concerned *Burford* abstention and whether the doctrine should be extended to a common law action for money damages. Mendez also cites *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004). However, he fails to develop an argument with respect to this decision. He says no more than it contains a discussion of abstention. The passage he quotes, however, is from a concurring opinion, not the majority opinion. Even then, it fails to address the issues before this Court.

Finally, *Mendez* cites *Friedrich v. Friedrich*, 78 F.3d 1060 (6th Cir. 1996). That case did not involve abstention or full faith and credit. Indeed, Mendez does not rely on it for those issues. Rather, it seems he cites *Friedrich* to suggest that dismissing this action would be a failure to heed the Convention's purposes: "'restoring the pre-abduction status quo,'" "'deter[ring] parents from crossing borders in search of a more sympathetic court,'" and permitting the country of habitual

---

[14] *Silverman*, 267 F.2d 788, concerned *Younger* abstention. However, as in *Barzilay*, in *Silverman*, the father filed in federal court first. Also, the state court never addressed any Convention issues. Here, the opposite is true.

residence to determine custody. Response, DN 14 at PageID# 113 (quoting *Friedrich*, 78 F.3d at 1064). This argument misses the mark as it presupposes that a wrongful abduction has taken place.

## CONCLUSION

The Hardin Circuit Court's Hague Judgment adjudicated Mendez's claim for his children's return to Japan pursuant to the Convention and ICARA. ICARA requires this Court to give that judgment full faith and credit. 22 U.S.C. § 9003(g). The relief requested by Mendez, if granted, would necessarily contravene and undermine that judgment. Accordingly, this Court finds that it should abstain and dismiss. The Court recognizes that abstention is generally the exception and not the rule but the dictates of both *Younger* and *Colorado River* abstention apply here. Most importantly, failing to abstain would render the Hardin Circuit Court's Hague Judgment nugatory. Accordingly, by separate order entered contemporaneously herewith, the Court will grant respondent Brandon's Motion to Dismiss (DN 6) and dismiss this action without prejudice. The Court will also deny Brandon's Motion to Strike (DN 17) for the reasons stated herein.

May 28, 2025

Charles R. Simpson III, Senior Judge
United States District Court

18