UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:24-CV-00736-CRS

JOVAN DAVID REBOLLEDO MENDEZ                                    PETITIONER

v.

KEELY MARIE BRANDON                                            RESPONDENT

## MEMORANDUM OPINION AND ORDER

On May 29, 2025, this Court dismissed this action, having abstained pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) and *Colorado River Water Conservation Dist.*, 424 U.S. 800 (1976) (DNs 18 & 19). This matter is now before the Court on petitioner Jovan Mendez's Rule 59(e) "Motion to Alter Amend Vacate" (DN 20). Under Rule 59(e), this Court may alter or amend based on "'(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Brumley v. United Parcel Service, Inc.*, 909 F.3d 834, 841 (6th Cir. 2018) (citation omitted). Mendez's Motion asserts that the Court clearly erred and that its judgment caused manifest injustice. However, for the most part, the Motion does no more than relitigate old matters and raise arguments that could have been raised prior to the entry of judgment. Such arguments are improper and do not entitle Mendez to Rule 59 relief. *Id.* (Rule 59 motion "'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'") (citation omitted). Nor has Mendez shown that the Court's decision to abstain caused a manifest injustice. For these reasons, his Motion (DN 20) will be denied.

## BACKGROUND

This action began with Mendez's Verified Petition for Return of Children to Japan (DN 1). Mendez is the children's father and respondent Keely Brandon is their mother. Mendez alleged

that since May 11, 2024, Brandon had wrongfully retained the children in the United States and refused to return them to Japan which, according to Mendez, was the children's "habitual residence." Verified Petition, DN 1 at ¶ 1. Mendez sought the children's return pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") as implemented by the International Child Abduction Remedies Act (ICARA), 22 U.S.C. § 9001 *et seq.* On March 18, 2025, this Court ordered Mendez to show cause as to why the Court should not abstain and dismiss pursuant to *Younger* or *Colorado River* or both. Order, DN 13. (the "Show Cause Order"). The Show Cause Order was based on two things: (1) the fact that the Hardin County (Kentucky) Circuit Court had entered a judgment resolving Mendez's Convention claims (the "Hague Judgment") and (2) ICARA's full-faith-and-credit mandate. 03/18/25 Order, DN 13.

The Hardin County Circuit Court acted in light of what Mendez had filed in that state court. Mendez had filed two documents: (1) "Father's Notice of Wrongful Retention Claim and Notice to Stay Pursuant to Article 16 of the Hague Child Abduction Convention" and (2) "Application for Assistance in Child's Return." 05/09/25 Mem. Opinion at PageID# 164. Mendez filed those documents in response to Brandon's having petitioned the state court not only for divorce but also for custody of the children. Mendez sought a stay of a decision on the right to the children's custody until after his claim under the Convention/ICARA had been resolved. Taken together, Mendez's Notice and Application (1) alleged that Brandon was wrongfully retaining the children in Kentucky, (2) set out all the elements of a wrongful retention case and (3) identified the issues that needed to be resolved under the Convention. *Id.* at PageID# 164-65. On December 16, 2024, the Hardin County Circuit Court set a "Hague Determination" hearing for February 17, 2025. *Id.* at PageID# 166 (citing DN 6-4). The order showed that the hearing was being set given that Mendez's wife had moved for custody. *Id.* Mendez did not challenge that Order. *Id.*

2

The Hardin County Circuit Court conducted the evidentiary hearing as scheduled. Mendez chose not to participate despite having been given notice of the hearing. *Id.* at PageID# 166. Thereafter, on February 25, 2025, the Hardin County Circuit Court issued its Findings of Fact, Conclusions of Law, Judgment and Decree with respect to Mendez's wrongful retention claim (the "Hauge Judgment"). *Id.* The Hardin County Circuit Court concluded that Mendez failed to prove his wrongful retention claim. *Id.* About one month later, on March 24, 2025, the Hardin Circuit Court dissolved the parties' marriage and awarded full custody of the children to Brandon. DN 15-1 (the "Custody Judgment"). The Custody Judgment incorporates by reference the Findings of Fact set forth in the Hague Judgment. *Id.*

In light of the state court's Hague Judgment and given that its judgment is entitled to full faith and credit under ICARA, this Court entered its Show Cause Order (DN 13). The Order directed Mendez "to show cause why the Petition should not be dismissed pursuant to either *Younger* . . . or *Colorado River* . . . or both." 03/18/25 Show Cause Order, DN 13, at PageID# 101. The Court also set a briefing schedule. *Id.* Mendez filed his first brief on the last day to do so. He filed his Reply brief a day late. The Court considered both of Mendez's briefs, denying Brandon's Motion to Strike Mendez's untimely Reply. The Court also considered the brief filed by Brandon. The Court found that abstention was proper under both *Younger* and *Colorado River*. 05/29/25 Mem. Opinion, DN 18. Accordingly, the Court dismissed this action. 05/29/25 Order, DN 19.

## ANALYSIS

Now, Mendez has moved to alter or amend this Court's May 29, 2025 Order (DN 20). Mendez first contends that the Court must change its judgment due to clear error. He is not entitled to such relief, however, unless he has shown that the Court's original judgment represents a "'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Dorger v. Allstate Ins. Co.*, 2009 WL 2136268 at *1 (E.D. Ky. Jul. 16, 2009) (quoting *Oto v. Metro. Life Ins.*

*Co.*, 224 F.3d 601, 606 (7th Cir. 2000)); *see also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (Rule 59 motion must "clearly establish a manifest error of law."). This is a high bar and Mendez has not overcome it. Instead, he mostly re-argues the same points he made in response to the Court's Show Cause Order.

Mendez first argues that abstention is disfavored in Convention cases, next that *Younger* does not apply to his case and then that *Colorado* River does not apply. He made the same arguments in response to the Court's Show Cause Order. Mendez argued that abstention is an exception, not usually applied in ICARA cases, and he argued that abstention would not be proper under either *Younger* or *Colorado River*. Response, DN 14 at PageID# 105-15; Final Brief, DN 16 at PageID# 137, 140-41. In his Rule 59(e) Motion, Mendez spends several pages rearguing the same points. Motion, DN 20 at PageID# 182-84 (abstention disfavored in Convention/ICARA cases); *Id.* at 184-86 (*Colorado River* abstention inapplicable); *Id.* at PageID# 186-88 (*Younger* abstention inapplicable). Mendez also argues that he never petitioned the state court for the children's return pursuant to the Convention and ICARA and that he was not properly served in the state court proceeding. *Id.* at PageID# 191, 194-95. He made the same arguments in his prior brief. Response to Show Cause Order, DN 14, at PageID# 106 and 105, respectively. Similarly, Mendez contends that allowing the state court to decide the Convention issues is to permit forum shopping and to deprive him of the right to his chosen forum. *Id.* at 192-93. These assertions also repeat his prior arguments. *See* Response, DN 14 at PageID# 106-11. Reasserting the same arguments does not provide a ground for relief under Rule 59(e). *Brumley*, 909 F.3d at 841.

Next, Mendez states that this Court erred by suggesting that he "delayed in filing" his Petition in this Court. Motion, DN 20 at PageID# 195. That contention is followed by a lengthy explanation as to what Mendez asserts is the typical amount of time it takes to get a petition before

a court. *Id.* at PageID# 195-98. None of this demonstrates how this Court made a clear error of law or ignored controlling precedent in reaching its abstention decision.

Nor does Mendez's argument demonstrate that the Court otherwise erred. Mendez has not argued that the Court's timeline of events was incorrect. As for what the timeline showed, first it showed that the state court evinced its belief that Mendez had filed a Convention/ICARA petition with the state court no later than December 16, 2024—the date on which it set a hearing on those issues. The timeline also showed that as of December 16, 2024, Mendez had not filed a petition with this Court. Additionally, it showed that at no time during the two months between the state court's order setting its Hague Determination hearing and the hearing itself did Mendez advise the state court that he intended to petition this Court for the children's return or that he had done so. Nor did Mendez ever advise the state court that it was mistaken in its conclusion that Mendez was seeking such relief from the state court. *See* 05/29/25 Mem. Opinion, DN 18, at PageID# 163-66 (setting out events). Mendez has not shown that this timeline of events is incorrect or that the Court was mistaken in its conclusions.

Nor has Mendez shown that the Court's timeline of events led to a clear error of law. Mendez contends that he could not defend in state court without sacrificing his lack-of-personal-jurisdiction defense; thus, he refrained from participating. Reply, DN 22, at PageID# 218. This contention is unavailing. First, it is contrary to his assertion that Kentucky permits limited appearances. Second, it is belied by Kentucky Rule of Civil Procedure 12.02 (litigant may defend by filing a motion to dismiss for lack of personal jurisdiction). Nor does his assertion explain why Mendez failed to alert this Court to the parallel state court proceedings when he filed his Petition in this Court. Mendez filed in this Court on December 20, 2024 at which time the state court had entered its Order setting its Hague Determination Hearing, which was not to take place for another

two months, in mid-February, 2025. Nor does Mendez's assertion explain why he took no action to seek any sort of immediate relief from this Court in light of the state court hearing. Mendez did not seek such relief from this Court until after the state court had ruled against him in its Hague Judgment. The state court's Hague Judgment was entered on February 25, 2025. 05/09/25 Mem. Opinion at PageID# 166. Mendez did not seek expedited relief in this Court until March 3, 2025 (DN 11). Brandon responded to that Motion on March 17, 2025 (DN 12) and the Court issued its Show Cause Order the next day (DN 13).

Next, Mendez argues that the state court violated Article 16 of the Convention and violated his "jurisdictional rights." Motion, DN 20, at PageID# 188-94. While unclear, it seems that Mendez is asking this Court to overturn the state court's Hague Judgment. This Court is powerless to do so. Such relief is barred by the *Rooker/Feldman* abstention doctrine. *Anderson v. Charter Tp. of Ypsilanti*, 266 F.3d 487, 492 (6th Cir. 2001) (*Rooker/Feldman* abstention states that lower federal courts do not have jurisdiction to review a case litigated and decided in state court). Moreover, this Court is required to give the state court's Hague Judgment preclusive effect. 22 U.S.C. § 9003(g) ("Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this chapter.").

Finally, Mendez asserts that the Court's abstention decision created a manifest injustice for five reasons. Motion, DN 20, at PageID# 198. None of Mendez's contentions demonstrates a flaw in the Court's abstention decision which caused an obvious, unjust result. Mendez first asserts that he was "deprived of rights guaranteed under international treaties ratified by the United States." *Id.* To the contrary, his rights were adjudicated by a state court. The state court notified Mendez of its intent to adjudicate his rights under the Convention. Mendez did not object. Nor did he advise

the state court that he had not petitioned it for such relief. Such a strategic choice to forgo taking action, despite clear warnings as well as ample time to take action, does not show that this Court caused a manifest injustice.

Second, Mendez contends that as a result of the Court's abstention decision Brandon was able to "defeat federal jurisdiction through state court proceedings" which "incentivizes child abduction." *Id.* Mendez is clearly unhappy with the state court's Hague Judgment and this Court's decision to abstain. However, it is ICARA itself which gives original, concurrent jurisdiction to the state courts and ICARA which requires federal courts to give full faith and credit to state court judgments that grant or deny the return of a child. 22 U.S.C. §§ 9003(a) & (g), respectively. In no way has Mendez shown that this statutory scheme incentivizes kidnapping.

Third, Mendez asserts that a violation of "international obligations" has occurred, causing danger to Americans: "The United States fails to meet its treaty commitment, potentially affecting reciprocal treatment of American citizens abroad." Motion, DN 20, at PageID# 198. Mendez does not provide any further explanation or any support for his speculation. In this case, a state court denied the children's return under the Convention. This Court abstained from ruling on the same issue so as to give, as required, the state court's judgment full faith and credit. Mendez has not shown how these events will result in Americans being treated unfavorably abroad.

Fourth, Mendez asserts that "Delay in Hague proceedings prolongs the child's separation from their habitual residence, causing potential psychological harm, and parental alienation." *Id.* Mendez does not identify the delay to which he is referring or otherwise develop this assertion or

provide support for it. Nor does this assertion demonstrate an error in the Court's application of the law that caused an obvious, unjust result.

Fifth, Mendez asserts that the state court nullified the Convention's protections by issuing custody orders in violation of Article 16. This assertion does not articulate an error by this Court. Even so, the state court did not effectively abolish the Convention. Article 16 states that a court "shall not decide the merits of rights of custody until it has been determined that the child is not to be returned under this Convention . . . ." The state court resolved whether Mendez was entitled to the children's return under the Convention first and did not issue a final custody order on the merits until after it issued its Hague Judgment. *See* 05/09/25 Mem. Opinion, DN 18, at PageID# 166.

## CONCLUSION

Mendez's Rule 59(e) Motion does not demonstrate either a clear error of law or manifest injustice which are the grounds on which it rests. Accordingly, his "Motion to Alter Amend Vacate" **(DN 20)** is **DENIED**.

**IT IS SO ORDERED**.

This is a final and appealable order there being no just cause for delay.

March 10, 2026

Charles R. Simpson III, Senior Judge
United States District Court

8